Robert E. Wilgus and Thelma Wilgus v. Commissioner. Herbert Calhoun and Myrtha Calhoun v. Commissioner.
Wilgus v. Commissioner
Docket Nos. 82355, 82356.
United States Tax Court
T.C. Memo 1961-152; 1961 Tax Ct. Memo LEXIS 198; 20 T.C.M. (CCH) 752; T.C.M. (RIA) 61152; May 26, 1961
*198 During the periods here in question petitioners Wilgus and Calhoun were the principal stockholders of a corporation referred to as Acme. In 1953, Ame entered into an oral service agreement with a corporation referred to as Allied wherein it was agreed that Acme would loan out Wilgus and Calhoun to Allied for a consideration of $1,000 per week. In July 1954 the consideration was reduced from $1,000 per week to $700 per week but the remainder of the oral agreement continued in full force and effect until the end of February 1955 when it was terminated. From August to December 1954 and for the first two months of 1955, Allied paid Acme as consideration for the services of Wilgus and Calhoun the amounts of $13,700 and $5,100, respectively. The respondent determined that these amounts were taxable to Wilgus and Calhoun and not to Acme. Held, respondent erred in his determination. Harry Adelberg, Esq., Mathieson Bldg., Baltimore, Md., for the petitioners Herbert A. Seidman, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion ARUNDELL, Judge: In these consolidated proceedings respondent determined deficiencies in income tax as follows: Dkt. No.
Petitioner
Year
Deficiency
82355
Robert E. and Thelma Wilgus
1952
$1,354.88 *
82355
Robert E. and Thelma Wilgus
1955
516.00
82356
Herbert and Myrtha Calhoun
1954
3,046.18
82356
Herbert and Myrtha Calhoun
1955
2,535.00
*199 The only issue is whether certain amounts of $13,700 and $5,100 paid during the latter portion of the year 1954 and the first two months of 1955, respectively, by Allied Poultry Processors Company to Acme Poultry Corporation constituted income to petitioners in 1954 and 1955, respectively, as compensation for services; or whether these amounts were paid pursuant to an oral service agreement by and between Acme and Allied effective from October 1953 through February 1955 providing for a "loan out" from Acme to Allied of the services of Acme's executive officers, the male petitioners herein, in consideration for the amounts so paid. Another issue (statute of limitations) was assigned by petitioners but it has not been pressed and is considered as abandoned. Findings of Fact The stipulated facts are so found and are incorporated herein by this *200 reference. Petitioners Robert E. and Thelma Wilgus are and were husband and wife who reside and have resided in Roxana, Delaware, at all times relevant to this proceeding. Petitioners Herbert and Myrtha Calhoun are and were husband and wife who reside and have resided in Dagsboro, Delaware, at all times relevant to this proceeding. Joint Federal income tax returns were filed by each couple, petitioners herein, for the calendar years 1951 through 1955 with the district director at Wilmington, Delaware. On September 3, 1942, Acme Poultry Corporation (hereinafter sometimes referred to as Acme) was incorporated in the State of Delaware for the purpose of processing and marketing poultry products at a plant in Berlin, Maryland. The outstanding capital stock of Acme was 1,000 shares, 483 of which were owned by petitioner Robert E. Wilgus (hereinafter sometimes referred to as Wilgus) and 483 of which shares were owned by petitioner Herbert Calhoun (hereinafter sometimes referred to as Calhoun). Thomas F. Johnson owned 4 shares and the wives of Wilgus and Calhoun each owned 15 shares. On April 8, 1953, Allied Poultry Processors Company (hereinafter sometimes referred to as Allied) *201 was incorporated in the State of Delaware for the purpose of effecting economies in the processing of poultry and poultry products in a combined operation, utilizing the plants of five independent poultry processing corporations. The necessity for a combined operation arose due to depressed economic conditions in the poultry business on the Eastern shores of Maryland and Delaware in 1953. Each of the five participating corporations (including Acme) owned in its own name 20 percent of the outstanding capital stock of Allied, representing an investment of $15,000 each. The names of the other four participating corporations were Diamond State Poultry Company, Inc., Delmarva Poultry Corporation, H. & H. Poultry Processing Company, and Milsboro Poultry. Shortly after its incorporation in 1953, Allied leased from each participant its plant and improvements for use in Allied's combined operation, in return for a weekly rental of $1,000 per plant. Delmarva furnished two plants for a weekly rental of $1,000 for each plant. Also, in 1953, effective October 1953, Allied entered into oral service agreements with each of the five participating corporations (including Acme) in which it was agreed *202 that Allied would employ from each of the five participating corporations (including Acme) the services of two executives to be used in the management of Allied, for which services Allied agreed to pay each corporation a fixed fee of $1,000 per week for the two executives thus loaned to Allied. Under the oral service agreement with Acme, Acme agreed to furnish the services of Wilgus and Calhoun and to instruct them to devote their time and working hours to the business of Allied, and not to become engaged in any other business of a similar nature to that of Allied or to compete with Allied in any way. Pursuant to the oral service or "loan out" agreement, Allied paid Acme $1,000 a week beginning October 1953 to August 1954, and $700 a week from August 1954 to February 1955 when the agreement terminated. Only the amounts paid from August 1954 to February 1955 are in dispute. The amounts so paid were $13,700 in 1954 and $5,100 in the first two months of 1955. The amounts in dispute were designated in the general ledger of Allied as "Services" or "Executive Services." The oral service agreement between Allied and Acme was not cancelled either by Acme or Allied from the inception of *203 the agreement in October 1953 until the termination of the relationship of Acme with Allied in February 1955 except for a reduction in the amount to be paid beginning in August 1954. All payments by Allied to Acme pursuant to the oral service agreement were paid by check to Acme, the payee in every instance being "Acme Poultry Corporation" and in no instance were any such payments ever made payable either to Wilgus or Calhoun. G. R. Wilt, the chief accountant for Allied, was at all times directed to designate payees of checks issued pursuant to the oral service agreements by Harry Landes, the chairman of the board, and not by Calhoun. All payments pursuant to the oral service agreements by Allied to each and every participant were in gross amounts with no deduction for social security, Federal and State withholding taxes. All payments by Allied to its approximately 2,000 employees were in net amounts after proper deduction for social security, Federal and State withholding taxes. All payments of salary by Acme to Wilgus and Calhoun were net amounts after proper deduction for social security, Federal and State withholding taxes. All payments received by Acme from Allied *204 from the inception of Allied were reported as income by Acme, so entered on its records, and no such payments were reported as income by Wilgus or Calhoun. All payments received by Wilgus and Calhoun from Acme from the inception of Allied were reported as compensation on their individual income tax returns. Salaries from Acme reported by Wilgus and Calhoun in their calendar year returns for the years 1951 through 1955 were as follows: Year
Wilgus
Calhoun
1951
$ 4,850
$ 4,770
1952
26,500
26,500
1953
6,500
6,500
1954
None
None
1955
25,000
25,000
Both Acme and Allied reported on the basis of fiscal years ending August 31 and November 30, respectively. Acme accrued to Wilgus and Calhoun each a salary of $25,000 for the fiscal year beginning on September 1, 1954, and ending on August 31, 1955. From this accrual, Acme made deductions for social security, Federal and State withholding taxes of $4,980.50 and $5,035.40, for Wilgus and Calhoun, respectively, and paid the balance of the accrual to Wilgus and Calhoun as follows: Date
Wilgus
Calhoun
August 3, 1955
$ 5,000.00
$5,000.00
September 3, 1955
5,000.00
5,000.00
November 9, 1955
10,019.50
9,964.60
*205 Wilgus and Calhoun each reported a salary of $25,000 from Acme in their respective returns for the calendar year 1955. Neither Allied's board of directors, Harry Landes nor Acme terminated the oral service agreement until February 1955 when Acme withdrew from the operation of Allied. Opinion The question here is solely one of fact and is whether the oral service agreement entered into in 1953 between Acme and Allied came to an end during July 1954 or whether it continued in full force and effect through February 1955, except for the reduction of the amount to be paid Acme by Allied for the services of Wilgus and Calhoun from $1,000 per week to $700 per week. There is no need to review here the great mass of evidence, both oral and documentary, that has been introduced. We have carefully considered all of the evidence and are firmly convinced that the agreement continued in full force and effect, except for the reduction, through February 1955. It is the respondent's contention that after July 1954 Wilgus and Calhoun became the employees of Allied and were entitled to receive the $13,700 that was paid by Allied to Acme during the period from August 1, 1954, to December 31, 1954, and *206 the $5,100 that was paid by Allied to Acme during the first two months of 1955. Although these amounts were in fact paid by Allied to Acme in the same manner as the amounts paid prior to August 1954, the respondent contends that Wilgus and Calhoun ordered Allied to pay the amounts to Acme, thus bringing into play the doctrine of assignment of income and the application of . There is no evidence that either Wilgus or Calhoun ever ordered Allied to pay the amounts to Acme. Wilt, the accountant for Allied, worked under the direction of Landes the chairman of the board of Allied. Wilt testified that the checks for the amounts here in dispute were drawn to the order of Acme under the instructions of Landes and that he understood it was in accordance with the oral service agreement. The respondent also stresses the fact that for the fiscal year ended August 31, 1954, Acme did not accrue and pay Wilgus and Calhoun any salary. This, except for the month of August 1954, was prior to the critical period here involved, namely, August 1954 to February 1955, inclusive. For the fiscal year ending August 31, 1955, Acme did accrue and pay to Wilgus and Calhoun *207 a salary of $25,000 each, less the deductions for social security, Federal and State withholding taxes of $4,980.50 and $5,035.40, respectively. This fiscal year included 6 months of the 7-month critical period here involved. We think it is important to note that all payments to Acme pursuant to the oral service agreement were in gross amounts with no deduction for social security, Federal and State withholding taxes, whereas the payments made by Allied to its approximately 2,000 employees were in net amounts after proper deduction for social security, Federal and State withholding taxes; also, that all payments of salaries by Acme to Wilgus and Calhoun were in net amounts after proper deduction for social security, Federal and State withholding taxes. After a careful consideration of the entire record, it is our opinion and we so find and hold that during the critical period here involved, Wilgus and Calhoun continued to be, as they were prior to August 1954, the employees of Acme and not of Allied; and that the amounts paid by Allied to Acme constituted income to Acme and not income to Wilgus and Calhoun. Accordingly, we find and hold that petitioners Robert E. and Thelma Wilgus *208 are not taxable on the amount of $4,400 paid by Allied to Acme from August to December 31, 1954, or on the amount of $1,200 paid by Allied to Acme during the first two months of 1955, and that there are no deficiencies due from these petitioners for the years 1952 and 1955. We also find and hold that petitioners Herbert and Myrtha Calhoun are not taxable on the amount of $9,300 paid by Allied to Acme from August to December 31, 1954, or on the amount of $3,900 paid by Allied to Acme during the first two months of 1955, and that there are no deficiencies due from these petitioners for the years 1954 and 1955. Decisions will be entered for the petitioners. Footnotes
*. The deficiency in Dkt. No. 82355 for the year 1952 is predicated upon an adjustment made for the year 1954 which forms the issue in this proceeding. However, as a result of a net operating loss carryback from the year 1954 to 1952 which was reduced by the aforementioned adjustment, the deficiency is attributable to the year 1952.↩